## Patton *vs.* Harris.

Pet. Eq.

Case 14.

APPEAL FROM FLEMING CIRCUIT.

1. The Court of Appeals will take jurisdiction of a judgment of a Circuit Court committing a party for a contempt in failing to comply with the orders of the court to pay money or surrender property, only so far as to see that the sum required to be paid is due, and the conditions on which the person should be discharged.

2. The Court of Appeals has no power to reverse an order of a Circuit Court ordering a commitment as a punishment for a contempt.

3. Slaves mortgaged may be properly attached by a mortgagee, on proper allegations showing their probable removal to the prejudice of the mortgagee; and if the mortgagor will not give bond that they be forthcoming to satisfy the decree of the court that the sheriff hire them out to raise a fund to be subject to the decree of the court in the case. If the mortgagee receive the possession he should account for reasonable hire. If the slaves be of no value on hire, or if they escape from the mortgagee where they are delivered to him by the sheriff, their clothing, and support, and the expenses and charges incurred for their recovery, should be borne by the mortgagor.

The facts of the case are stated in the opinion of the court.—*Rep.*

*W. W. Trimble,* for appellant—

The plaintiff in error contends that the Circuit Court erred in the following particulars:

1. In committing the appellant to jail at October term, 1852.

2. In its decree at the April term, 1855, in continuing the order of imprisonment against the appellant until he paid or secured the payment of a large sum of money, or brought the mortgaged slaves back to Kentucky.

3. In sustaining the attachment obtained by appellee.

4. In decreeing that $700 16 was due from appellant to appellee on the mortgage. In charging Patton with the expense of removing the slaves—boarding and keeping while in possession of the mort-

PATTON
vs.
HARRIS.

gagee—with physician's bills and expenses while in jail in Mason county, and for expenses incurred by appellee in hunting for the slaves after they had escaped.

The first two propositions are analogous, and will be considered together. Has this court jurisdiction of the judgment for imprisonment for a contempt rendered by the Circuit Court in October, 1852? It is insisted that it has. This court, at its June term, 1853, decided that it had jurisdiction only to correct the error of the Circuit Court in the amount to be paid by appellant to appellee, but as to the imprisonment for contempt it had not jurisdiction. That decision cannot be a bar to this appeal, as the court did not then take jurisdiction of the question. The Code of Practice regulates the proceedings in all prosecutions and penal actions, and all laws coming within the purview of that act are repealed, except that proceedings commenced prior to the 1st of July, 1854, should not be rendered invalid.

A contempt of court is a public offense within the meaning of the Code in Criminal Cases. (*Sections* 1, 2, 3, 4, 5, 6, *of Title* 1, *Crim. Code.*) The adoption of this Code repeals that part of article 1 of the chapter on courts which prohibited the taking an appeal or writ of error in cases of felony, or from an order or judgment punishing a contempt, &c. A contempt is a public offense in the class of misdemeanors as defined by the Code, and by section 342 it gives this court appellate jurisdiction when the judgment is for a fine exceeding $100, or the imprisonment exceeds fifty days.

The appellant was not committed for any definite period; but the court, in its judgment, ordered him to jail, there to remain until he should pay to the appellee a large sum of money. And at the last term of the court a final decree is rendered in the case fixing $700 16, with interest, costs, &c., as the amount due to appellee, and adjudging that whenever the same is paid or replevied by appellant he may be dis-

charged from the commitment for contempt. The order of imprisonment is indefinite and arbitrary, and its effect is to confine appellant perpetually unless in the meantime he has the ability to pay the debt, give security, or bring back his fugitive slaves from the regions of Canada.

The imprisonment has been longer than fifty days, and this court has jurisdiction. (*Criminal Code, sec.* 342.)

The Civil Code is relied upon as showing the mode of proceeding on which the case may be brought before this court. (*Sections* 574, 5, 6, and 884.)

The errors of the court at the October term, 1852, which are complained of are: 1. That the court, after hearing the appellant in discharge of the contempt, went on to hear other testimony. 2. In committing appellant for more than one day without the intervention of a jury. 3. The court erred in not specifying the time of imprisonment. (4 *Black.* marg. page 287; 2 *Hawk.* 114.) Lord Mansfield states the practice of the courts to be "if the defendant by his answer fully denies the charge, that is sufficient; the weight of the evidence or the credibility of what is sworn is never considered, but if the defendant is hardy enough to swear falsely, he is punished by indictment." (*Douglas' Rep.* 498–516.)

The 1st section, article 4, limits the judge to a fine of thirty dollars or imprisonment for one day. (*Rev. Stat.* 273.)

The imprisonment is for an indefinite period. This is error. (*Birkley vs. Commonwealth,* 2 *J. J. Mar.* 275.)

3. The court erred in sustaining the appellees attachment: 1. Because the allegations of the bill were insufficient, and not such as the law requires. (1 *B. Mon.* 155–6; 7 *Ib.* 265; 9 *Ib.* 23; *see also Barr vs.* —— *M. S. opinion of Fall term* 1847; 9 *Dana,* 98.) 2. The proof does not sustain the grounds of the attachment.

4. The court erred in decreeing that appellant was indebted to appellee $700 16 upon the mortgage; in

charging appellant with the expense of removing the slaves; with their boarding, &c., while in possession of the mortgagee; with physician's bills; with their keeping while confined in the Mason county jail; and for expenses incurred in hunting for the slaves.

As a mortgagee in possession it was the duty of appellee to take such care of the slaves as a provident owner would do, and is bound for hire, such as a reasonably vigilant owner would have received, (4 *Kent* 166; 3 *Powell on Mortgages*, 949, *note E* 2, *and F*,) unless he shows that there could be no hire obtained. (2 *J. J. Mar*. 465; 1 *Mon*. 71; 2 *B. Mon*. 61.)

The slaves were committed to jail contrary to law, as this court intimated in *Harris vs. Hill, January*, 1851. The slaves were wrongfully attached by appellant, and he should be accountable for hire during all the time which elapsed since they were attached, and he should have credit for no expenditures not necessary to the safety of the negroes (1 *Powell*, 189; 3 *Ib*. 921; 4 *Kent*, 167.) Principal and interest is all the mortgagee can ask. He is entitled to nothing for trouble. (2 *Mar*. 339; 1 *Dana*, 286; 1 *Powell*, 297, *and* 1027. A mortgagee in possession can only be allowed the expenses necessarily incurred in protecting the mortgaged property. (1 *Powell*, 189; 3 *Ib*. 157; 1 *Johnson's C. Rep*. 388; 4 *Ib*. 541.)

The expenses of physicians, removal, hunting for the slaves, &c., were expenses incurred by the acts of appellee and improperly charged to appellant.

We ask a reversal.

*Cavan*, on the same side—

Appellant complains, 1. That the decree against him is for too much.

The report of commissioner Wood showed only a balance of $13 25 due upon the mortgage on the 26th of March, 1852. This report was excepted to, and the case was then referred to Bruce, whose report was excepted to by appellant, but the exceptions overruled, and report confirmed. The commission-

er allowed $190 50 for physician's bills, and funeral expenses of one of the slaves that died in Harris' possession. He allowed also for expenses incurred in searching for the slaves, and for their keeping in jail, wrongfully as we say, at Harris' instance, and only allows $240 50 for hire of the slaves; this is not what the testimony authorizes.

2. The credits of hire shown have been given annually as they fell due, and stopped interest.

3. The court should not have sustained the attachment. A mortgagee, after a breach of the condition, is entitled to the possession of the mortgaged property unless there be a stipulation to the contrary. The mortgagor's title is like that of a bailee, unless there had been some wrongful act by the mortgagor whereby the rights of the mortgagee would be impaired; no action lay against the mortgagor to get possession without a demand first made, or notice at least by the mortgagee that he desired the possession. (*Story on Bailments, sec.* 107; 2 *B. Monroe,* 160; 5 *Ib.* 391.)

4. The grounds upon which the attachment issued being denied by the answer and not sustained by the proof, it should have been discharged. A reversal is asked.

*W. H. Cord,* for appellee—

Argued—1. That the decree was not for enough. That complainant had been compelled to make large expenditures, and incur costs, and get nothing.

The conduct of the appellant had been the cause of the whole litigation, and he should be charged with all the consequences of a litigation which he has forced upon the appellee. The expenditures made by appellee were such as were called for by humanity and justice. The appellant furnished no bedding, clothing, or medical assistance to the slaves in their need. It was done by others, and he is justly charged with it.

2. A mortgagee in possession is only bound to account for hires and rents actually received. (*Head*

vs. *Overton*, 1 *J. J. Marshall*, 557; *Clarke vs. Robbins*, 6 *Dana*, 356.) Appellee is not responsible for hires not received, unless through neglect he has failed to receive them. (*Bainbridge vs. Owen*, 2 *J. J. Marshall*, 465.) There is no proof here of any negligence on the part of appellee.

Harris, appellee, was bound to use proper exertions to recover the slaves. (2 *J. J. Marshall, supra.*) And this should be a charge upon the appellant, and was properly charged to him in the commissioner's report. These charges being all made, the decree should have been for $938, with interest from 1st October, 1854, when the estimate was made, and all costs, including commissioner's fee.

3. The attachment was correctly sustained by the court. Subsequent events show that the grounds were true, and well founded.

The jurisdiction of the chancellor to provide for the safety of property subject to lien is not doubted; and the principles adopted by the court are right, and the decree right, except as to the amount. It is not for enough.

June 12.

Chief Justice MARSHALL delivered the opinion of the Court—

This cause, so far as relates to the ascertainment of the mortgage debt and the foreclosure of the mortgage, was reversed in December, 1852, and remanded in order that the respective claims of the parties arising out of the attachment and proceedings thereon, and by which the mortgage debt might be affected, should be ascertained. Before this was finally done, but after a decree of sale had been rendered, the mortgaged slaves which had been attached constituting the only security for the debt, were removed from the jurisdiction of the court, and in fact taken from this State to some distant part of the State of Ohio, or to other unknown parts, so that they could not and cannot yet be subjected to the mortgage. And there being sufficient evidence that this was

done by the act or contrivance of Patton, process of contempt was issued against him, and he was committed to jail under an order of the court, requiring, as the condition of his discharge, that he should pay a certain sum assumed to be the amount of the mortgage debt, which however had not then been ascertained by a statement of the amounts above referred to.

At the June term, 1853, this court regarding the commitment to jail as not merely a punishment for the contempt, but also as a means intended to coerce payment of the sum assumed to be due, and for which a sale had been ordered by the decree afterwards reversed, took jurisdiction to revise the order of commitment so far only as it prescribed the conditions of a discharge, and reversed it not only because the sum required to be paid had not been ascertained to be the debt actually recoverable, but because there ought to have been other conditions on which the prisoner might have been discharged besides the actual payment of the debt, even if ascertained.

A report having been afterwards made showing the state of the accounts between the parties in various aspects, the court adopted that which stated the balance due to Harris, the mortgagee, as being, on the 1st day of October, 1854, seven hundred dollars, and decreed a sale of the mortgaged slaves, if produced, or of so many as might suffice to pay that sum, with interest from said 1st day of October, and decreed further that Patton might be discharged from the commitment and imprisonment by paying or replevying, with sufficient security, the said sum and interest, but reserving power to make further order with respect to said commitment.

The objections now made to this decree on the part of Patton resolve themselves into three general grounds, viz: 1. That the original attachment of the mortgaged slaves was not authorized by the statements of the bill and the affidavit thereto, and consequently that the expenses growing out of the

1. The Court of Appeals will take jurisdiction of a judgment of a Circuit Court committing a party for a contempt in failing to comply with the orders of the court to pay money or surrender property, only so far as to see that the sum required to be paid is due, and the conditions on which the person should be discharged.

PATTON
*vs.*
HARRIS.

attachment ought not to be charged to Patton, but that Harris should be answerable to him for all losses consequent thereto, and for such hires as might have been obtained if there had been no attachment. 2. That if this be not so, and if Patton be chargeable with the expenses, he should be credited by the hires or services of the slaves at least while in the possession of Harris or his agents, after they had been attached, and that the expenses allowed are too high and the hires too low, and that consequently the sum decreed is too large. And 3. It is insisted that the continued imprisonment of Patton and the conditions prescribed for his discharge are illegal and oppressive, and that the decree upon that subject should be reversed, if erroneous in no other respect.

2. The Court of Appeals has no power io reverse an order of a Circuit Court ordering a commitment as a punishment for a contempt.

Taking up this last objection first, we remark that if Patton had in fact remained in prison from the time of the commitment up to the rendition of the final decree, and still remains there, it would seem to be reasonably apparent that his imprisonment is and will be an ineffectual means of coercing payment of the mortgage debt, or of securing the future return and subjection of the mortgaged slaves to the satisfaction of the decree of foreclosure. A longer continuance of an imprisonment already protracted through a period of two or three years would, as a punishment, seem to be unreasonable and inconsistent with the spirit of the constitution with respect to excessive bail, excessive fines, and cruel punishments, (*Art.* 13, *sec.* 17,) and also with the enactments with respect to contempts. But considering the order with respect to the commitment and imprisonment as a punishment for contempt, this court has no jurisdiction to reverse it. And as there is no error in allowing the prisoner to discharge himself by paying or replevying the debt, and as the decree reserves a power over the subject which will enable the court to allow a discharge upon easier conditions, and as Patton did not offer or ask for any other conditions, we are of opinion that a reversal of this

part of the decree is neither proper nor necessary for any beneficial purpose; but it is sufficient to suggest, as we do, that unless it should be made to appear to the Circuit Court, at its first term, that a further continuance of the imprisonment will probably coerce from Patton either a payment of the decree or a production of the slaves or of such as will suffice to make the sum due, he may be discharged from imprisonment, by making a fair and full surrender of all his means of paying said decree, or of such as shall be sufficient, verifying the statement of his assets by his oath, but subject to be contradicted by opposing evidence.

With regard to the legality of the attachment, we think there is no room for serious question. The bill charges that the mortgaged slaves, a female and several infant children, were in possession of Patton, living near the Ohio river; that the husband of the mother is a free colored man; that Patton desires the emancipation of the woman and her children, has declared that they shall not be sold, &c., and will, as is believed, remove them to Ohio to prevent it. The bill is sworn to in the usual form, not indeed by the complainant himself, but by one who states himself to be the beneficiary of the mortgage, and who, as we understand the case, is responsible for the debt. The facts alleged are proved by evidence which is most strongly corroborated by the actual abduction of the slaves, as above stated.

The slaves were properly attached, and no bond having been given by Patton, they were, on the 12th of April, 1849, placed by the sheriff in the jail of Mason county, situated in Maysville. At the succeeding May term of the Mason Circuit Court, in which the bill was filed, the slaves being still in jail, were directed by an interlocutory order to be taken into possession by McMillan, a deputy sheriff, and hired out, under bond from the hirer to have them forthcoming to satisfy any decree, &c., and in case he could not hire them he was directed to deliver them to the

3. Slaves mortgaged may be properly attached by a mortgagee, on proper allegations showing their probable removal to the prejudice of the mortgagee; and if the mortgagor will not give bond that they be forthcoming to satisfy the decree of the court that the sheriff hire them out to raise a fund to be subject to the decree of the court in the case. If the mortgagee receive the possession he should account for reasonable hire. If the slaves be of no value on hire, or if they escape from the mortgagee where they are delivered to him by the sheriff, their clothing, and support, and the expenses and charges incurred for their

PATTON
*vs.*
HARRIS.

recovery, should
be borne by the
mortgagor.

complainant, who was directed to hire them on the same terms. This deputy sheriff states in his deposition that he could not hire the slaves on the conditions prescribed, and that in June, 1849, he delivered them to the attorney of the complainant, who took them to the neighboring county of Fleming, where he resided. At the time of this removal the cholera prevailed in Maysville, the slaves who had been insufficiently clothed while in jail, were nearly destitute of that article, and otherwise in bad condition; one of the children died in a day or two afterwards; others had been and were still sick; one had the cholera. They were worth nothing by way of hire while in jail, nor for the remainder of the year, but their keeping, removal, clothing, and doctoring occasioned heavy expenses, which, as consequent upon the legal attachment and the directions of the court, should be borne by Patton or the mortgaged property. On the other hand, the reasonable value of their hires or services, after the expiration of the year 1849, should be charged to the mortgagee, who being bound to make proper exertions for the discovery and apprehension of the slaves when they were secretly abducted, is entitled to be reimbursed in the reasonable expenses incurred in doing so. Without going into the details of this part of the subject, to which we have paid due attention in examining the report and the evidence, we are of opinion, that the result adopted by the court is founded upon reasonable allowances and charges for the several particulars which have been referred to, and that the sum decreed as being due upon the mortgage is as nearly right as upon this record, and considering the nature of the facts, can be adopted.

Wherefore, the decree is affirmed.